IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WEC 98C-4 LLC,<br><br>      Plaintiff,<br>v.<br><br>SAKS, INCORPORATED,<br><br>      Defendant. | Case No. 20-cv-04363 |

## MOTION TO INTERVENE

TOCU II LLC, a Delaware limited liability company ("TOCU II" or "Plaintiff-Intervenor"), by and through Midland Loan Services, a division of PNC Bank, National Association ("Midland"), solely in its capacity as servicer, and through its undersigned counsel, submits this Motion to Intervene[1] in this matter pursuant to Federal Rule of Civil Procedure 24(a)(2), and in support of its Motion states as follows:

## NATURE OF THE ACTION

1. On July 24, 2020, Plaintiff WEC 98C-4 LLC ("WEC") filed an action against Saks, Incorporated ("Saks") for breach of a corporate guaranty, alleging that Saks refused to honor its payment obligations under a certain lease guaranty (the "Lease Guaranty"). (Dkt. # 1, ¶ 2). Under the Lease Guaranty, Saks promised unconditionally to guarantee the payment of rent and other amounts by the tenant (the "Tenant") of the subject property located at the North Riverside Park Mall, 7501 W. Cermak Road, North Riverside, Illinois (the "Premises"). (*Id.*, ¶ 1). TOCU II is lender to WEC, and WEC has defaulted on that loan. The Lease Guaranty by Saks was security

---

[1] TOCU II's proposed Complaint in Intervention is attached hereto as <u>Exhibit 1</u>.

54048045;1

for the loan. Thus, any amounts that Saks pays on the Lease Guaranty are owed and shall be paid directly to TOCU II.

2. The Tenant filed for bankruptcy in February 2018 and subsequently rejected the lease on the Premises. (*Id.*, ¶ 2). Despite a demand to do so, Saks refused to honor its payment obligations under the Lease Guaranty. (*Id.*, ¶¶ 18-19). Consequently, WEC initiated this action to recover amounts due under the Lease Guaranty and any other damages.

## **BACKGROUND FACTS**

3. In 1998, Red Mountain Funding, L.L.C. ("Original Lender") made a loan (the "Original Loan") to WEC in the original principal amount of $14,012,500.00, as evidenced by (i) a promissory note (the "Note"); (ii) a mortgage agreement (the "Mortgage"); and (iii) an assignment of lease and rents (the "ALR"). As part of the ALR, which was executed at the same time as the Lease Guaranty, WEC assigned to the Original Lender the Lease Guaranty.

4. Subsequently, the Original Lender split the promissory note into two notes: Promissory Note A in the original principal amount of $8,372,716.00 (the "A Note") and Promissory Note B in the original principal amount of $4,924,759.00 (the "B Note") (collectively, the "Notes").

5. Original Lender later endorsed the A Note and assigned the Mortgage and ALR to TOCU II. By virtue of the assignment of the ALR, the Lease Guaranty was also assigned to TOCU II, and all payment and performance obligations under the Lease Guaranty are due to TOCU II.

6. On February 4, 2018, Tenant's parent company sought bankruptcy protection in a proceeding styled *In re: The Bon-Ton Stores, Inc*., Case No. 18-10248 in the United States Bankruptcy Court for the District of Delaware (the "Tenant Bankruptcy Case").

7. The Tenant's rejection of the Lease triggered Saks' obligations under the Lease Guaranty, including, *inter alia*, prompt payment to TOCU II of minimum and additional rents due under the Lease and performance of additional obligations thereunder.

8. WEC failed to make the scheduled payment to TOCU II on the Loan in February 2018 as required by the terms of the Notes and thus defaulted on the Mortgage.

9. WEC's demands to Saks for payment under the Lease Guaranty went altogether unfulfilled.

10. In September 2018, TOCU II commenced in the Circuit Court of Cook County, Illinois ("State Court") a mortgage foreclosure action to foreclose on the Mortgage and any junior liens and encumbrances on the mortgaged property (the "Mortgage Foreclosure Proceeding"). On November 12, 2019, the State Court judge entered summary judgment of mortgage foreclosure and other relief in favor of TOCU II (the "Foreclosure Judgment") which, among other things, (i) permitted a judicial sale of the mortgaged property; and (ii) entered judgment against WEC in the amount of $10,548,701.86 (the "Judgment").

11. The ALR evidences WEC's irrevocable assignment to TOCU II of all interest in the Lease Guaranty together with all rights, powers, privileges, options and other benefits. And TOCU II has a valid and enforceable judgment against WEC in the amount of no less than $10 million.

**ARGUMENT**

12. Intervention as of right is appropriate pursuant to Fed. R. Civ. P. 24(a)(2) where the intervenor satisfied four factors: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing

3
54048045;1

parties to the action." *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). A motion to intervene as of right "should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Id.*

13. As to the first factor, an application is generally timely if the intervenor acts with reasonable diligence in learning of a suit that might affect their rights. *See e.g.*, *Lopez-Aguilar v. Marion County Sheriff's Department*, 924 F.3d 375, 388 (7th Cir. 2019) ("The test for timeliness is essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.") (internal quotations omitted). Here, TOCU II is moving to intervene within a week of filing of the original action and before Saks is required to respond to the complaint. TOCU II's application is timely.

14. TOCU II has a legally recognizable interest at stake sufficient to show that it has an interest relating to the subject matter of the action. *See e.g.*, *National Union Fir Ins. Co. v. Continental Illinois Corp.*, 113 F.R.D. 532, 534 (N.D. Ill. 1986) (finding the intervenor must demonstrate a "legally cognizable interest"). This factor is satisfied "where a would-be intervenor has a legal claim that could be made the basis of an independent suit against the defendant in which he seeks to intervene." *Solid Waste Agency of Northern Cook Co. v. U.S. Army Corps of Engineers*, 101 F.3d 503, 506 (7th Cir. 1996). For example, courts have found that an intervenor with a contractual and economic interest in the proceeding was sufficient to satisfy this factor. *In re Stone & Webster, Inc.*, 380 B.R. 366, 372 (D. Del. B.R. 2008) ("Intervenors have a 'significantly protectable' legal interest because they have both an economic interest and a contractual interest in this adversary proceeding."). Here, TOCU II is legally entitled to the benefit of the Lease Guaranty, which is the basis of this proceeding. WEC admits in its complaint that "all obligations

4

for rent, debt service, taxes and expenses were Tenant's, and all payments were to be remitted directly by Tenant to Landlord's Lender." Docket No. 1 at 1. As such, TOCU II has a clear interest relating to the subject matter of this litigation, as its rights vis-à-vis the Lease Guaranty are directly at issue.

15. An intervenor can establish that its interest may be impaired where there is concern with the res judicata effect of a decision. *Lopez-Aguilar*, 924 F.3d at 392-93. Similarly, impairment can be shown where the intervenor would be required to initiate a separate suit to assert its interest. *Id.* at 392. Both situations are present here. Because the outcome of this litigation will necessarily involve the interpretation of the Lease Guaranty, there is a strong likelihood that the outcome of this litigation will impact any separate litigation TOCU II would undertake to enforce its rights under the Lease Guaranty. Similarly, if TOCU II is not permitted to intervene, it would be forced to initiate a separate action to assert its interests. Either way the disposition of the action presents a potential impairment of TOCU II's interest.

16. The burden to demonstrate inadequacy of representation is "minimal" and "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Comms.*, 493 F.3d 570, 578 (5th Cir. 2007). And courts only presume adequacy of representation "where the interests of the original party and of the intervenor are identical." *Lopez-Aguilar*, 924 F.3d at 392. Here, WEC and TOCU II do not have identical interests. And because of the adversarial relationship between WEC and TOCU II in other proceedings, there is more than a chance that WEC would not adequately represent TOCU II's interests.

WHEREFORE, TOCU II respectfully requests that this Court (i) grant its Motion and enter an order allowing TOCU II to intervene as a matter of right; (ii) accept TOCU II's Complaint in

Intervention as attached to this motion; and (iii) grant such other and further relief as this Court deems just and proper.

                                       TOCU II LLC, a Delaware limited liability company

                                       By: *Thomas B. Fullerton*
                                       One of its attorneys

Mark S. Bernstein (6198568)
Thomas B. Fullerton (6296539)
Jordan D. Mobley (6313519)
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
(312) 634-5700
mark.bernstein@akerman.com
thomas.fullerton@akerman.com
jordan.mobley@akerman.com

54048045;1