IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEC98C-4 LLC, <br><br>   Plaintiff, <br><br>  v. <br><br>SAKS INCORPORATED, <br><br>   Defendant. | |
| TOCU II LLC, <br><br>  Plaintiff-Intervenor, <br><br>  v. <br><br>SAKS INCORPORATED, <br><br>   Defendant. | Case No. 20 C 4363 <br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

For the following reasons, the Court denies Defendant Saks Incorporated's motion to dismiss the complaint (Dkt. No. 19) and motion to dismiss the complaint in intervention (Dkt. No. 25.)

### I. BACKGROUND

In 1985, the Plaintiff landlord's predecessor in interest and the predecessor in interest to a Bon-Ton Stores, Inc.'s subsidiary, CPS Department Stores, Inc. ("Tenant"), entered into a Lease. (Compl. ¶ 10, Dkt. No. 1; *see also* Lease, Compl., Ex. 1, Dkt. No. 1-1.) The Lease related to a piece of property located in the North

Riverside Park Mall in North Riverside, Illinois for the operation of a Carson Pirie Scott department store. (Compl. ¶ 9.)

On August 5, 1998, Red Mountain Funding, LLC ("Original Lender"), made a loan to Plaintiff landlord in the amount of $14,012,500.00 memorialized by a promissory note, a mortgage agreement, and an assignment of lease and rents ("ALR"). (Intervenor Compl. ¶ 11, Dkt. No. 23.) On the same date, Proffitt's Inc., the predecessor in interest to Defendant Saks Inc., executed a written Lease Guaranty in favor of Plaintiff landlord as it related to the Tenant's obligations under the Lease, including prompt payment of its rent. (Compl. ¶ 13, *see also* Lease Guaranty, Compl., Ex. 4, Dkt. No. 1-4.)

In 2004, Original Lender and Plaintiff landlord split the promissory note into two loans: Note A in the amount $8,372,716.00 and Note B in the amount of $4,924,759.00. (Intervenor Compl. ¶ 14.) At some time later, the Original Lender endorsed Note A and assigned the mortgage and ALR to Plaintiff-Intervenor, TOCU II, LLC. (*Id.* ¶ 15.)

On February 4, 2018, Tenant's parent company, the Bon-Ton Stores, Inc., sought bankruptcy protection in the United States Bankruptcy Court in the District of Delaware. (*Id.* ¶ 16.) After the filing, Tenant failed to make a full rental payment for the month of February 2018 as required by the Lease. (Compl. ¶ 17.) At about the same time, Plaintiff landlord failed to make required

mortgage payments. (Intervenor Compl. ¶¶ 17-18.) These failures resulted in default. (Compl. ¶ 22.) And, on September 14, 2018, TOCU II brought a foreclosure action in Illinois state court. (Intervenor Compl. ¶ 23.) The state court appointed a receiver to oversee the premises. (*Id.* ¶ 24.) The receiver immediately attempted to re-let the premises. (*Id.* ¶ 25.)

On November 12, 2019, the state court entered a judgment of foreclosure in favor of TOCU II. (*Id.* ¶ 26.) This permitted the premises to be sold at a judicial sale and a judgment in the amount of $10,548,701.86 was entered against the Plaintiff landlord. (*Id.; see also* Judgment, Intervenor Compl., Ex. D, Dkt. No. 23.) On January 10, 2020, the judicial sale was held, and the property was sold to TOCU II for $2,250,000, which was its bid. (Intervenor Compl. ¶ 27.) Under the terms of the ALR, the Plaintiff landlord, as borrower, irrevocably assigned to TOCU II all of its interest in the Lease Guaranty. (*Id.* ¶ 29.)

The Lease Guaranty states in relevant part:

> NOW, THEREFORE, in consideration of and as an inducement for the Landlord's purchase of the Demised Premises and the granting, execution and delivery of the Second Amendment (the Original Lease, as amended by the First Amendment and the Second Amendment, is hereinafter called the "Lease"), and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by the undersigned, Guarantor, intending to be legally bound, hereby guarantees to Landlord the full and prompt payment when due of all Basic Rent, additional rent and any and all other sums and charges payable by Tenant under

the Lease, and the full, faithful and prompt performance and observance of all the covenants, terms, conditions, and agreements therein provided to be performed and observed by Tenant (collectively, the "Obligations"); and Guarantor does hereby become surety to Landlord for and with respect to all of the Obligations.

Guarantor hereby covenants and agrees to and with Landlord that if default shall at any time be made by Tenant in the payment of any such rent or other sums or charges payable by Tenant under the Lease or in the performance of any of the covenants, terms, conditions or agreements contained in the Lease, Guarantor will forthwith pay such rent or other sums or charges to Landlord, and any arrears thereof, and will forthwith faithfully perform and fulfill all of such covenants, terms, conditions and agreements, and will forthwith pay to Landlord all damages and all costs and expenses that may arise in consequence of any default by Guarantor hereunder (including, without limitation, all reasonable attorneys' fees incurred by Landlord or caused by any such default and/or by the enforcement of this Guaranty).

This Guaranty is an absolute and unconditional guaranty of payment (and not of collection) and of performance and is a surety agreement. Guarantor's liability hereunder is direct and may be enforced without Landlord being required to resort to any other right, remedy or security and this Guaranty shall be enforceable against Guarantor, without the necessity for any suit or proceedings on Landlord's part of any kind or nature whatsoever against Tenant, and without the necessity of any notice of non-payment, non-performance or non-observance or the continuance of any such default or of any notice of acceptance of this Guaranty or of Landlord's intention to act in reliance hereon or of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives; and Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in

> nowise be terminated, affected or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.
>
> This Guaranty shall be a continuing Guaranty, and (whether or not Guarantor shall have notice or knowledge of any of the following) the liability and obligation of Guarantor hereunder shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, discharged or in any way impaired by, and shall not be subject to any reduction, imitation, termination, defense, offset, counterclaim or recoupment as a result of (a) any amendment or modification of, or supplement to, or extension or renewal of, the Lease or any assignment or transfer thereof; (b) any exercise or non-exercise of any right, power, remedy or privilege under or in respect of the Lease or this Guaranty or any waiver, consent or approval by Landlord with respect to any of the covenants, terms, conditions or agreements contained in the Lease or this Guaranty or any indulgences, forbearances or extensions of time for performance or observance allowed to Tenant or Guarantor from time to time and for any length of time;(c) any increase in, addition to, exchange or release of, or non-perfection of any lien on or security interest in, any collateral or any release or amendment or waiver of or consent to any departure from or failure to enforce any other guarantee, for all or any of the Obligations; (d) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation, dissolution or similar proceeding relating to Tenant, or its properties, or Guarantor including, without limitation, rejection of the Lease or guaranteed Obligations in such bankruptcy; . . .

(Lease Guaranty at 1–2.)

Plaintiff sued Defendant based on alleged breach of the Lease Guaranty. Prior to Defendant's response, TOCU II requested and was granted leave to intervene. TOCU II, the current holder of Note A,

the mortgage, and the ALR that includes the Lease Guaranty, filed a complaint in intervention. TOCU II essentially makes the same claim as Plaintiff. Defendant now moves to dismiss both the complaint and the complaint in intervention pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(1). Defendant asserts a factual challenge to Plaintiff's and TOCU II's complaints. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (noting that in evaluating a challenge to subject matter jurisdiction, a court must first determine whether a defendant has raised a factual or facial challenge). "A factual challenge contends that there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient. *Id.* (quotation and citation omitted). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.*; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). The plaintiff bears the burden of establishing the elements necessary for jurisdiction. *See Silha*, 807 F.3d at 173.

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a Rule 12(b)(6) motion, the complaint's

allegations must meet a standard of "plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (quotation and citation omitted).

### III. DISCUSSION

Defendant moves to dismiss both the complaint and the complaint in intervention. It raises four arguments in support of dismissal: (1) Plaintiff and TOCU II lack standing; (2) Plaintiff and TOCU II waived their right to rent by failing to bring a claim against Tenant in bankruptcy court; (3) Tenant was excused from performance of the Lease because of the mall's transformation; and (4) Plaintiff and TOCU II failed to plead mitigation. The Court addresses each of these arguments as follows.

#### A. Lack of Standing

Defendant's lack of standing claim is based on its contention that it was a surety for the Tenant, its principal. And, according to surety law, a surety stands in the place of its principal and if principal owes nothing the surety as its stand-in also owes nothing. This argument, however, flies in the face of the Lease

Guaranty and Illinois law. The Lease Guaranty clearly states that it is "an absolute and unconditional guaranty of payment" and "Guarantor's liability hereunder is direct." (Lease Guaranty at 2.) The Illinois Supreme Court states: "[a] surety is an insurer of the debt or obligation, while a guarantor is an insurer of the ability or the solvency of the principal." *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 939 N.E.2d 487, 495 (Ill. 2010) (citing 28 C.J. §§ 4, 5, at 890–91 (1922)). "A guaranty is a contract and should be interpreted according to the standards that govern the interpretation of contracts in general." *T.C.T. Bldg. P'ship v. Tandy Corp.*, 751 N.E.2d 135, 139 (Ill. App. Ct. 2001). Moreover, an Illinois Appellate Court has stated that:

> [A] guarantee is to be strictly construed in favor of the guarantor such that the guarantor is according the benefit of any doubt that arises from the contract language. The guarantor is entitled to such benefit, however, only where some doubt arises as to the meaning of the guaranty language. Where the terms of a guaranty contract are clear and unambiguous, they must be given effect as written and under such circumstances, the meaning of a guaranty is a question of law.

*Id.* at 139–40 (internal citations omitted). To argue that a tenant's release somehow releases the guarantor from an obligation to pay rent due completely misstates the role of the guarantor under the clear terms of the Lease Guaranty in this case. The main purpose of having a guarantor is to protect the holder of the

guaranty in the event that the principal cannot make required payments.

As far as the Plaintiff's standing is concerned (as opposed to the Plaintiff-Intervenor), even though Plaintiff assigned all of its interest in the Lease Guaranty to TOCU II, Plaintiff still has standing. Under the terms of the Lease Guaranty, in addition to rents, the Guarantor unconditionally guarantees "all damages and all costs and expenses that may arise in consequence of any default by Guarantor." (Lease Guaranty at 2.) This means that Plaintiff may be entitled to consequential damages that it may have incurred as a result of the Lease default. It is too early for the Court to say that there are none. Therefore, this argument fails.

### B. The Waiver Argument

Defendant next argues that bankruptcy law allows the Tenant to reject executory contracts, including leases, and the bankruptcy court allowed Tenant to do so with respect to the Lease in this case. Therefore, according to Defendant, the landlord (here Plaintiff and TOCU II) had "the right to submit a pre-petition claim for any damages resulting from the rejection of the Lease." (Compl. Dismissal Memo. at 10, Dkt. No. 20.) And, having failed to do so, they waive their rights to such damages.

This argument also flies in the face of the clear language of the Lease Guaranty. The Lease Guaranty indicates, "the liability

and obligation of Guarantor hereunder shall be absolute and unconditional . . . and shall not be released, discharged or in any way impaired by . . . (d) any bankruptcy . . . relating to Tenant . . . including, without limitation, rejection of the Lease . . . ." (Lease Guaranty at 2.) Under the clear terms of the Lease Guaranty, this argument fails.

### C. Transformation of The Mall

Support for this claim is a local newspaper article, stating that the Riverside Mall lost two major tenants in 1992 and 2001. (See Newspaper Article, Compl. Dismissal Memo., Ex. A, Dkt. No. 20-1.) Defendant contends that the loss of these two major tenants transformed the mall, thus excusing the Tenant from performance. This excuse, Defendant argues, also lets the Guarantor off the hook.

While a local news article is not the type of document that can be relied upon on to support a motion to dismiss, this argument also fails to account for the fact that Defendant guarantor executed a "Guarantor Estoppel Certificate" in 2017. (Compl. ¶ 15, *see also* Guarantor Estoppel Certificate, Compl., Ex. 5, Dkt. No. 1-5.) In this document, Defendant expressly certified to Plaintiff that the Lease Guaranty remained in full force and effect as of that date. The Defendant executed the Guarantor Estoppel Certificate long after the exits of the two tenants described in

the news article relied upon here. Accordingly, this argument fails.

### D. Failure to Mitigate

Finally, Defendant makes a dubious argument that Plaintiff and TOCU II had an obligation to mitigate damages. It gets there by quoting from a provision in the Illinois Forcible Entry and Detainer Act that concerns a landlord's duty to mitigate after it has taken possession of the leased premises. Whether this defense can be enforced against a holder of a guaranty is doubtful, and Defendant has cited no cases explicitly holding as such. Even if there is a duty to mitigate, however, TOCU II has pleaded an attempt to mitigate. TOCU II pleaded that a receiver was appointed to supervise the property, and the receiver listed the property for sale with a major brokerage firm. Moreover, such an argument, if it has legs, is better left for summary judgment. This argument fails.

### IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant Saks Incorporated's motion to dismiss the complaint (Dkt. No. 19) and motion to dismiss the complaint in intervention (Dkt. No. 25.)

**IT IS SO ORDERED.**

                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

Dated: 12/7/2020