**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **WEC 98C-4 LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **SAKS INCORPORATED,** <br><br> Defendant. <br><br>  ─────────────────────────── <br><br> **TOCU II LLC,** <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> **SAKS INCORPORATED,** <br><br> Defendant. | <br><br><br><br><br><br><br><br> **Case No. 20 C 4363** <br><br> **Judge Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated herein, Plaintiff-Intervenor TOCU II's Motion for Summary Judgment (Dkt. No. 43) is granted in part and denied in part. Summary judgment is granted on the issue of liability and the calculation of unpaid basic rent and denied as to the remainder of Plaintiff-Intervenor's damages calculation. Defendant Saks Incorporated's Motion pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. No 52) is granted in part denied in part. Defendant is allowed discovery on the issue of damages other than rent due.

## I. BACKGROUND

This case involves an attempt by the holder of a guarantee to recover damages, including unpaid rents, due on certain premises located in a shopping center in Riverside, Illinois. In June 1985, CPS Realty Partnership leased a portion of the Riverside shopping center and began operating the premises as a Carson Pirie Scott & Co. ("Carson's) department store. (Def.'s Resp. to Intervenor Pl.'s Stmt. of Facts ("DSOF") ¶¶ 8–9, Dkt. No. 51.) Carson's lease was modified in February 1994 and again in August 1998. (*Id.* ¶ 10.)

The 1998 lease amendment coincided with Plaintiff WEC 98C-4 LLC's purchase of the Riverside shopping center. (Mortg. Contract, Donahue Aff., Ex. 3, Dkt. No. 43-6.) The loan papers associated with WEC's purchase assigned the right to make a claim for, receive, and collect all rents associated with Carson's lease to the then-mortgage holder Red Mountain Funding LLC. (Assignment of Lease and Rents ¶ 1, Donahue Aff., Ex. 4, Dkt. No. 43-7.) The Assignment of Lease and Rents Agreement also directed Carson's to make its rent payments under the lease directly to Red Mountain Funding LLC. (*Id.* ¶ 4.) Through a series of transactions, WEC's mortgage documents for the Riverside shopping center were later assigned to Intervenor TOCU II LLC. (Assumption and Modification Agreement, Donahue Aff., Ex. 5, Dkt. No. 43-8.)

In August 1998, Carson's ultimate parent company, Proffit's, Inc., executed a Corporate Guaranty covering Carson's lease at the Riverside shopping center. (DSOF ¶ 24.) Proffit's is the predecessor-in-interest to Defendant Saks Incorporated. (*Id.* ¶ 5.) The Corporate Guaranty states in relevant part:

> Guarantor hereby covenants and agrees to and with Landlord that if default shall at any time be made by Tenant in the payment of any such rent or other sums or charges payable by Tenant under the Lease or in the performance of any of the covenants, terms, conditions or agreements contained in the Lease, Guarantor will forthwith pay such rent or other sums or charges to Landlord, and any arrears thereof, and will forthwith faithfully perform and fulfill all of such covenants, terms, conditions and agreements, and will forthwith pay to Landlord all damages and all costs and expenses that may arise in consequence of any default by Guarantor hereunder (including, without limitation, all reasonable attorneys' fees incurred by Landlord or caused by any such default and/or by the enforcement of this Guaranty).
>
> This Guaranty is an absolute and unconditional guaranty of payment (and not of collection) and of performance and is a surety agreement. Guarantor's liability hereunder is direct and may be enforced without Landlord being required to resort to any other right, remedy or security and this Guaranty shall be enforceable against Guarantor, without the necessity for any suit or proceedings on Landlord's part of any kind or nature whatsoever against Tenant, and without the necessity of any notice of non-payment, non-performance or non-observance or the continuance of any such default or of any notice of acceptance of this Guaranty or of Landlord's intention to act in reliance hereon or of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives; and Guarantor hereby expressly agrees that the validity of this Guaranty and

> the obligations of Guarantor hereunder shall in nowise be terminated, affected or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.
>
> This Guaranty shall be a continuing Guaranty, and (whether or not Guarantor shall have notice or knowledge of any of the following) the liability and obligation of Guarantor hereunder shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, discharged or in any way impaired by, and shall not be subject to any reduction, imitation, termination, defense, offset, counterclaim or recoupment as a result of (a) any amendment or modification of, or supplement to, or extension or renewal of, the Lease or any assignment or transfer thereof; (b) any exercise or non-exercise of any right, power, remedy or privilege under or in respect of the Lease or this Guaranty or any waiver, consent or approval by Landlord with respect to any of the covenants, terms, conditions or agreements contained in the Lease or this Guaranty or any indulgences, forbearances or extensions of time for performance or observance allowed to Tenant or Guarantor from time to time and for any length of time; (c) any increase in, addition to, exchange or release of, or non-perfection of any lien on or security interest in, any collateral or any release or amendment or waiver of or consent to any departure from or failure to enforce any other guarantee, for all or any of the Obligations; (d) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation, dissolution or similar proceeding relating to Tenant, or its properties, or Guarantor including, without limitation, rejection of the Lease or guaranteed Obligations in such bankruptcy; . . .

(Corporate Guaranty at 1-2, Compl., Ex. 4, Dkt. No. 1-4.)

In April 2017, Saks executed a Guarantor Estoppel Certificate that provides "To the best of Guarantor's knowledge the Corporate Guaranty . . . is in full force and effect." (DSOF

¶ 32.) Less than a year later in February 2018, Carson's immediate parent company, Bon-Ton Stores, filed for bankruptcy protection in Delaware Bankruptcy Court. (*Id.* ¶ 33.) At that time Carson's discontinued payment of all rent and later rejected the lease in the bankruptcy proceeding. (*Id.* ¶¶ 36–37.) Pursuant to the Corporate Guaranty, WEC notified Saks of Carson's default and demanded that Saks honor its obligations. (*Id.* ¶ 34.) Saks did not make any payments to WEC in response to these communications.

In September 2018, TOCU commenced a mortgage foreclosure proceeding on the Riverside shopping center in the Circuit Court of Cook County. (*Id.* ¶ 39.) In connection with the foreclosure proceedings, TOCU sought and received the appointment of a receiver for the premises. (*Id.* ¶ 40.) The Cook County Court later granted TOCU a judgment of foreclosure. (*Id.* ¶ 42.)

In July 2020 WEC filed a Complaint in this Court against Saks for unpaid rent. (Dkt. No. 1.) In October 2020, the Court allowed TOCU to intervene to sue Saks on the Guaranty. (Dkt. No. 22.) In December 2020, the Court denied Saks's Motions to Dismiss the Complaint and the Complaint in Intervention. (Dkt. No. 32.) In March 2021, the Court denied Saks' Motion for Certification of an Interlocutory Appeal. (Dkt. No. 42.) TOCU now moves for summary judgment. (Dkt. No. 43.) Saks in response asks the Court to refuse to grant summary judgment or continue its ruling pending further

discovery, pursuant to Federal Rule of Civil Procedure 56(d). (Dkt. No. 52.)

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" when identified by substantive law as affecting the outcome of the suit. *Bunn v. Khoury Enters.*, Inc., 753 F.3d 676, 681 (7th Cir. 2014). An issue is genuine when the evidence presented is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 681–82. When reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Bunn*, 753 F.3d at 682.

Rule 56(d) also provides that if the non-movant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" the Court may defer its consideration of the motion for summary judgment, allow time for proper discovery or issue any other appropriate order. FED. R. CIV. P. 56(d). "The mere fact that discovery is incomplete

is not enough to prevent summary judgment." *Smith v. OSF HeathCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019). Instead the non-moving party must present an affidavit or declaration setting out the "specific reasons discovery should be extended, which requires more than a fond hope that more fishing might net some good evidence." *Id.* The decision to grant or deny discovery is committed to the Court's discretion. *Becker v. Internal Revenue Serv.*, 34 F.3d 398, 405 (7th Cir. 1994).

### III. DISCUSSION

TOCU's Complaint in Intervention alleges a single count of breach of contract against Saks. (Intervention Compl. at 6, Dkt. No. 23.) The Court evaluates TOCU's Motion for Summary Judgment and Sak's Rule 56(d) Motion in two parts, first on the issue of liability and then damages. For the reasons set forth below the Court grants TOCU's motion for summary judgment on the issue of liability. As to damages, the Court grants summary judgment in favor of TOCU on the issue of rent due, but grants Saks' Rule 56(d) Motion on the issue of damages other than unpaid rent.

#### A. Liability Under the Contract

At the outset, TOCU contends that Saks violated Federal Rule of Civil Procedure 8(b) and Local Rule 56.1 in its Answer to TOCU's Complaint in Intervention and its Answers to TOCU's Rule 56.1 statement of facts by taking the position that these allegations

and statements called for the admission of legal conclusions and thus there was no obligation to admit or deny them. Saks' position on this thorny issue is one that this Court and others have wrestled with many times. Unfortunately, there is no decision from the Court of Appeals to guide the lower courts, and there are District Court decisions going both ways. *Compare Fetzer v. Walmart Stores, Inc.*, 2016 WL 792296, at *8 (N.D. Ill. Mar. 1, 2016) (disregarding legal arguments and conclusions in Rule 56.1 statements) *with State Farm Mut. Ins. Co. v. Riley*, 199 F.R.D. 276, 278-79 (N.D. Ill. 2001) (holding that parties must respond to legal conclusions in pleadings).

The Court does not need to decide the appropriateness of Saks' responses. The Motion for Summary Judgment filed in this case will be decided on legal conclusions the Court will draw from the language employed in the Corporate Guaranty because Saks admits that "the language of the Guaranty is not in dispute." (Opp'n at 3, Dkt. No. 47.) Saks may present arguments regarding the interpretation of the Corporate Guaranty, but the contract's interpretation, including whether there is any ambiguity in its terms, is a legal conclusion for the Court to make.

TOCU argues that under the plain language of the Corporate Guaranty Saks is a guarantor and was obligated to assume Carson's lease obligations. In response Saks argues that it is both a surety

and a guarantor and its liability under the Corporate Guaranty is measured by Carson's liability, which is now zero following the company's rejection of the Riverside shopping center lease in bankruptcy. The Illinois Supreme Court has recognized the difference between sureties and guarantors: "[a] surety is an insurer of the debt or obligation, while a guarantor is an insurer of the ability or the solvency of the principal." *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 939 N.E.2d 487, 495 (Ill. 2010). The liability of a surety "is measured by the liability of its principal." *Village of Rosemont v. Lentin Lumber Co.*, 494 N.E.2d 592, 602–03 (Ill. App. Ct. 1986). A guarantor's liability on the other hand is "determined from the instrument of guaranty." *Du Quoin State Bank v. Daulby*, 450 N.E.2d 347, 348 (Ill. App. Ct. 1983). An action for recovery under a guaranty is separate from the remedies against the original debtor. *Id.*

This Court on two prior occasions, specifically the December 7, 2020 Order denying Saks' Motions to Dismiss and the March 2, 2021 Order denying Saks' Motion for Leave to Appeal, has held that under the clear and unambiguous terms of the Corporate Guaranty Saks is a guarantor. *WEC98C-4 LLC v. Saks Inc.*, 2020 WL 7183745, at *3 (N.D. Ill. Dec. 7, 2020) ("*WEC98C-4 I*"); *see also WEC 98C-4, LLC v. Saks, Inc.*, 2021 WL 5033463, at *2 (N.D. Ill. Mar. 2, 2021) ("*WEC98C-4 II*"). Consistent with these prior opinions, the

Court continues to hold that Saks is a guarantor and any contrary holding flies in the face of the clear, unambiguous wording of the Corporate Guaranty and Illinois law. As the Court stated in its prior ruling denying Saks' Motion to Dismiss:

> To argue that a tenant's release somehow releases the guarantor from an obligation to pay rent due completely misstates the role of the guarantor under the clear terms of the Lease Guaranty in this case. The main purpose of having a guarantor is to protect the holder of the guaranty in the event that the principal cannot make required payments.

*WEC98C-4 I*, 2020 WL 7183745, at *4. Whether the Corporate Guaranty also designates Saks as a surety and bestows another set of benefits and burdens does not alter its obligations to perform as a guarantor under the clear and unambiguous language of the contract. Carson's default on the Riverside shopping center lease triggered Sak's obligation to "pay such rent or other sums or charges to Landlord, and any arrears thereof." (Corporate Guaranty at 1–2.) Saks' failure to make such payments has therefore breached the express terms of the Corporate Guaranty.

The Court's ruling on Saks' Motions to Dismiss also held that none of Saks' asserted affirmative defenses, *i.e.,* lack of standing, waiver, impossibility, and failure to mitigate were legitimate. *WEC98C-4 I*, 2020 WL 7183745, at *3–*4. Saks renews each of these affirmative defenses but fails in its Response Brief and Statement of Additional Facts to present any new arguments as

to why the Court's prior reasoning should not continue to hold sway.

First Saks continues to pursue its claim that TOCU failed to mitigate its damages, a claim that this Court previously described as "dubious." *Id.* In support of this argument Saks cites the Illinois statute, 735 ILCS 5/9-213.1, which requires a landlord to take reasonable measures to mitigate damages after it has taken possession of the leased premises. But Saks fails to cite any case in which this provision was held applicable against a guarantor. Even if the statute applied to a guarantor, TOCU sought and was granted a receiver for the Riverside shopping center by the Cook County Court overseeing the foreclosure proceedings. There is no case law cited by Saks that holds that actions of a court-appointed receiver, who reports to the appointing court for approval of its activities, does not constitute mitigation under the Illinois statute.

Saks also renews its argument that the transformation of the Riverside shopping center has frustrated the purpose of Carson's lease. The Court previously considered this argument and cited the 2017 Guarantor Estoppel Certificate as foreclosing this argument. *WEC98C-4 I*, 2020 WL 7183745, at *4. Saks issued the Guarantor Estoppel Certificate, expressly certifying to Plaintiff that the lease guaranty remained in full force and effect as of 2017, which

- 11 -

was long after the so-called transformation that Saks describes occurred. While additional alleged transformative events may have happened after the Guarantor Estoppel Certificate was executed, these occurrences do not change the Court's conclusion that Saks has failed to establish even a prima facie case for the affirmative defenses of impossibility or frustration of purpose.

Saks' last defense to TOCU's Motion for Summary Judgment is its waiver argument. According to Saks, the failure of WEC and TOCU to make claims with the Bankruptcy Court for the defaulted rent after Carson's was allowed to reject the lease constitutes a waiver of a claim for rent. The Court said in its previous ruling that:

> This argument also flies in the face of the clear language of the Lease Guaranty. The Lease Guaranty indicates, "the liability and obligation of Guarantor hereunder shall be absolute and unconditional . . . and shall not be released, discharged or in any way impaired by . . . (d) any bankruptcy . . . relating to Tenant . . . including, without limitation, rejection of the Lease . . . ." (Lease Guaranty at 2.) Under the clear terms of the Lease Guaranty, this argument fails.

*Id.* The Court has also noted that, under Seventh Circuit law, a creditor's failure to file a claim in bankruptcy does not bar subsequent recovery from the bankrupt debtor's insurers. *WEC 98C-4 II*, 2021 WL 5033463, at *3 (citing *Matter of Fernstrom Storage*

*& Van Co.*, 938 F.2d 731, 733 (7th Cir. 1991)). The Court reaffirms these conclusions.

For all these reasons, the Court concludes Saks' failure to make the rental payments due under the Carson's lease after the store defaulted constitutes breach of the Corporate Guaranty. Because there is no issue of material fact on this issue, the Court grants summary judgment in favor of TOCU on the issue of liability.

### B. Damages

Having determined that Saks is liable under the Corporate Guaranty, the Court turns to the issue of damages. Saks attempts to resist summary judgment by arguing that there is a question of fact regarding the proper beneficiary of the rights under the Corporate Guaranty. But the Court has already concluded that WEC "assigned all of its interest in the [Guaranty Contract] to TOCU." *WEC98C-4 I*, 2020 WL 7183745, at *4. The remaining question for WEC, which is not the subject of this Motion for Summary Judgement, is whether it is entitled to consequential damages incurred as a result of Carson's lease default. *Id.*

The present Motion deals with the damages due pursuant to the Corporate Guaranty. Under the Corporate Guaranty TOCU is seeking over $6,527,454.50 in damages as of February 28, 2021 plus interest on this sum. This amount is considerably higher than the amount of basis rent alleged to be due as of February 28, 2021 ($2,949,225).

Saks does not dispute the calculation of basis rent from August 31, 2018 through February 28, 2021. (DOSF ¶ 44.) The Court therefore concludes there is no issue of material on TOCU's basic rent calculation. TOCU is therefore entitled to $2,949,225, as well as the additional months of basic rent due during the pendency of this motion.

The remainder of TOCU's damages claims are not liquidated. The Court agrees that additional discovery is needed to establish these amounts. The Court will therefore allow the Defendant to pursue discovery on the issue of the unliquidated damage claims.

## V. CONCLUSION

For the reasons stated herein, TOCU's Motion for Summary Judgment on the issue of liability is granted. Judgment is entered in favor of TOCU on the issue of basic rent due in the amount of $2,949,225.00, plus the additional months of basic rent due during the pendency of this motion.

The Motion pursuant to Rule 56(d) is denied in part and granted in part. Defendant is allowed discovery on the issue of damages other than rent due.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

Dated: 11/12/2021

- 15 -